UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

———

CRIMINAL NO. 07-10072-PBS

———

UNITED STATES

v.

BUFORD GEORGE PETERSON

———

**DEFENDANT'S MEMORANDUM OF LAW
RESPECTING THE ATTORNEY-CLIENT PRIVILEGE**

The defendant Buford George Peterson, through undersigned counsel, hereby submits, pursuant to the Court's request, this *Memorandum of Law* regarding the attorney-client privilege as applied to a defunct corporate-client.

**I.     STATEMENT OF RELEVANT FACTS.**

Ptech, Inc. was incorporated in this Commonwealth on February 2, 1994. (*See Exhibit 1*). On January 15, 2002, an entity by the same name was incorporated in the State of Delaware for the purpose of conducting a migratory merger. (*See Exhibit 2*). On March 8, 2002, the Massachusetts Ptech., Inc. merged into the Delaware Ptech Inc., thereby ceasing to exist. (*See Exhibit 1*). Delaware Ptech, Inc. was "forfeited" under Delaware law on February 28, 2003. (*See Exhibit 2*).

**II.    SUMMARY OF APPLICABLE LAW.**

In a federal criminal case, privileges take their content from the common law as it may be altered from time to time in the light of reason and experience. *United States v. Rakes*, 136 F.3d 1, 3 (1st Cir. 1998); *see* F.R.E. 501.

It is undisputed that the attorney-client privilege, one of the oldest and most venerable privileges, attaches to corporations as well as individuals. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985), citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981). For people and corporations, the attorney-client privilege serves the function of promoting full and frank communications between attorneys and their clients. *Id*. As the *Weintraub* Court recognized, however, the administration of the attorney-client privilege where the client is a corporation presents special problems. *Id*. In that case, the Supreme Court discussed "whether the trustee of a corporation in bankruptcy has the power to waive the debtor corporation's attorney-client privilege with respect to communications that took place before the filing of the petition in bankruptcy." *Id*. at 345. After weighing the interests of all parties, the Court concluded that the bankruptcy trustee should control whether or not to waive the corporation's privilege. *Id*. at 354. That is to say, when the control of a corporation passes to new management, the authority to assert and waive the attorney-client privilege passes as well. *Id*. at 349. In reaching this decision, the *Weintraub* Court drew a line between the corporate-client and the individual client:

> [A] corporation, as an inanimate entity, must act through agents.... When the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management. Under our holding today, this power passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors. An individual, in contrast, can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege.

*Id*. at 356.

Though *Weintraub* does not directly decide the matter of whether a defunct corporation maintains the attorney-client privilege like a deceased person would, many courts have relied on its reasoning to conclude that a corporation does not remain a "client" after it has ceased to function.

2

*See City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1199-1200 (C.D.Ca. 2007); *see, e.g.*, *Lewis v. United States*, 2004 WL 3203121, *4 (W.D.Tenn. 2004)(finding that attorney-client privilege could not be invoked where corporation "dead;" "[t]he company is bankrupt and has no assets, liabilities, directors, shareholders, or employees"); *In re JMP Newcor Int'l Inc.*, 204 B.R. 963, 964 (Bankr. N.D.Ill. 1997)(distinguishing between the attorney-client privilege, which belongs to the client and ceases to exist when the corporate client dissolves, and the work-product doctrine, which "belongs to both the attorney and client" and continues). *See also Nelson Constr. Co. v. U.S.*, 2008 WL 5049304, *1-2 (Fed.Cl. 2008)(commenting positively on *City of Rialto* and like cases).[1]
A defunct corporation simply does not have the same concerns as a deceased person and therefore has less need for the privilege. Where there are no assets left and no directors, the protections of the attorney-client privilege are less meaningful. *City of Rialto*, 492 F.Supp.2d at 1200. This rule is consistent with the principle that the attorney-client privilege should be given the narrowest interpretation consistent with its purpose. *See United States v. Nixon*, 418 U.S. 683, 709-710 (1974)(privilege must be narrowly construed because it is an obstacle to the search for truth). It follows, then, that counsel for the former corporation has no duty to assert the privilege on behalf of a non-functioning corporation and can be compelled to disclose what were previously privileged

---

[1] *Accord* Paul Rice, *Attorney-Client Privilege in the United States*, § 2.5 (2d ed.2007)("Once the corporate entity has ceased to exist, or no longer exists with any officers and directors who have the authority to assert or waive the privilege protection, some courts have concluded that the privilege dies with the entity, unlike the privilege held by the individual, and the lawyer can be compelled to disclose confidential communications previously protected by the entity's privilege.... Since the logic for even extending the attorney-client privilege to corporate entities is suspect, because it gives the protection to a fictitious legal entity that cannot speak, and provides no direct protection to the individuals who have to speak for the entity, the termination of the entity's protection may be reasonable. Parallels that have been drawn with individual clients are not apt, and the benefits from full disclosure of relevant facts should control the resolution of this question").

communications. *Gilliland v. Geramita*, 2006 WL 2642525, *4 (W.D.Pa. 2006).

### III. APPLICATION OF LAW TO FACTS.

Ptech no longer has an attorney-client privilege to speak of. The Massachusetts version of that entity does not exist, and hasn't since 2002. The Delaware corporation was forfeited seven years ago. It apparently has no assets, no directors, and no shareholders. It is simply non-operational. There is no current management to invoke the privilege. The government certainly cannot do so in management's stead. No policy or principle would be advanced by application of the attorney-client privilege in this case. To the contrary, the privilege would only frustrate the trial process and prevent Peterson from defending himself against the government's allegations. These very same considerations counsel against permitting Ptech's former counsel to invoke the privilege on Ptech's behalf. That privilege belonged to Ptech. Ptech is defunct, and so is the attorney-client privilege.

/s/Charles W. Rankin
Charles W. Rankin, BBO No. 411780
crankin@rankin-sultan.com
Kerry A. Haberlin, BBO No. 672649
khaberlin@rankin-sultan.com
Rankin & Sultan
151 Merrimac Street, 2nd Floor
Boston, MA 02114
(617)720-0011

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 26, 2010.

/s/Charles W. Rankin
Charles W. Rankin